## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Adrian Valadez Moran,<br><br>            Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas, Ur Mendoza Jaddou,<br>and Leslie Tritten,<br><br>            Defendants. | Case No. 21-cv-2323 (SRN/ECW)<br><br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

Mohamed Juldeh Jalloh, Jalloh Law Office, 7101 Northland Circle N, Suite 115, Brooklyn Park, MN 55428, for Plaintiff.

Mary Larakers and Tia Hockenberry, Office of Immigration Litigation—District Court Section, United States Department of Justice, 450 5th St. NW, Washington, DC 20001, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

Plaintiff Adrian Valadez Moran ("Plaintiff" or "Mr. Valadez Moran") was born in Durango, Mexico, and currently resides in Burnsville, Minnesota. He seeks a declaration by this Court that he is a United States citizen pursuant to 8 U.S.C. § 1503 and 28 U.S.C. § 2201.

Defendants Alejandro Mayorkas, Ur Mendoza Jaddou, and Leslie Tritten (collectively "the Defendants") are the heads of U.S. government agencies and offices that administer the country's immigration and naturalization system. They are each sued in their official capacity.

This matter was tried by way of a bench trial before the undersigned judge on December 18, 2023. At trial, Mr. Moran introduced fifteen exhibits into evidence and presented live testimony from two witnesses.[1] The Defendants introduced five exhibits into evidence, and presented no live testimony.

The Defendants filed three motions in limine prior to trial, seeking to exclude an affidavit by Mr. Moran's maternal grandfather as to the facts of his birth [Doc. No. 37], to exclude affidavits by both Mr. Moran and his mother [Doc. No. 38], and to exclude documents related to a polygraph examination taken by his mother [Doc. No. 39]. Prior to trial, the Defendants advised the Court that they were withdrawing the motion to exclude the birth affidavit given Mr. Moran's grandfather's unavailability to testify, and the Court accordingly denied the motion as moot. At trial, the Court also denied the Defendants' two outstanding motions in limine, and received the contested exhibits into evidence. (Tr. at 22:20–23:11; 40:18–41:15.)

Based on the evidence presented at trial, and all of the files, records, and proceedings herein, the Court makes the following Findings of Fact and Conclusions of Law.[2]

## II.    FINDINGS OF FACT

The Court finds the following facts to be proven by a preponderance of the evidence:

---

[1]    Mr. Valadez Moran introduced the live testimony of the following witnesses at trial: his mother, Juana Maria Moran Maldonado, and himself.

[2]    To the extent that any finding of fact shall be deemed to be a conclusion of law, it shall be so deemed, and vice versa.

A.    **Mr. Valadez Moran's Birth**

1.    Mr. Valadez Moran was born on January 10, 1994, in Durango, Mexico. (Tr. at 14:23–15:4; Pl. Exh. 5.) He is the oldest of four siblings, each of whom was born in Mexico. (Tr. at 14:20–15:10.) His mother is Juana Maria Moran Maldonado ("Ms. Moran"), and his father is Apolonio Valadez Marrufo. (Pl. Exh. 5.)

B.    **Ms. Moran's Place of Birth**

2.    Ms. Moran was born on April 27, 1975. (Tr. at 16:25; Pl. Exh. 10.) Her mother is Maria Irma Maldonado and her father is Santos Moran Bermudez. (Tr. at 15:22–16:2; Pl. Exh. 10.)

3.    On October 10, 1975, Ms. Moran's parents registered her birth with the Mexican government, and obtained a Mexican birth certificate for her. (Tr. at 58:6–15; Pl. Exh. 10.) Her Mexican birth certificate identifies her place of birth as Elsa, Texas. (Pl. Exh. 10.) On the same day, her parents registered her birth with the Registry Court of the Civil State in Durango, Mexico, before a civil state judge. (Tr. at 59:23–60:12; Pl. Exh. 11.) The Judge of the Registry of the Civil State in Durango also certified Ms. Moran's birth as having taken place on April 27, 1975, in Elsa, Texas. (Pl. Exh. 11.)

4.    Ms. Moran obtained a court-ordered delayed certificate of birth from the Hidalgo County District Court, in Hidalgo County, Texas, on July 3, 2006, listing her place of birth as Elsa, Texas. (Pl. Exh. 6.) In

support of her petition for a delayed birth certificate, Ms. Moran submitted: (1) an affidavit from her father stating that she was born in Elsa, Texas; (2) a baptism record identifying her place of birth as Elsa, Texas; (3) her Mexican birth certificate certifying that she was born in Elsa, Texas; (4) academic achievement records from her high school in Edcouch, Texas, identifying her place of birth as Elsa, Texas; (5) her cumulative standardized testing results from her high school in Edcouch, Texas; (6) her childhood immunization records; (7) her cumulative academic record from her elementary school in Edcouch, Texas; (8) a confirmation record identifying her place of birth as Elsa, Texas; and (9) the Mexican birth certificate of her son Luis Aletxandro Valadez Moran, identifying her (his mother's) place of birth as Elsa, Texas. (Pl. Exh. 9.)

5.      On August 27, 2008, Ms. Moran's father signed a birth affidavit in support of a U.S. passport application to the U.S. Department of State ("DOS"). (Pl. Exh. 12.) In the affidavit, he swore that Ms. Moran was born on April 27, 1975, in Elsa, Texas. (*Id.*) On October 27, 2008, Ms. Moran's mother signed a birth affidavit in support of the same passport application, wherein she swore that Ms. Moran was born on April 27, 1975, in Elsa, Texas. (*Id.*)

6.     Ms. Moran's passport application was approved. (Tr. at 19:5.) DOS
       issued a passport to Ms. Moran on December 9, 2008, U.S. passport
       number 450461362. (*See* Def. Exh. 2.)

7.     Ms. Moran's parents, grandparents, and aunts have always told her
       that she was born in Texas. (Tr. at 15:20, 20:19–20, 27:6–9, 64:1–15.)
       Ms. Moran told Mr. Valadez Moran that she was born in Texas and is
       a U.S. citizen by birth. (Tr. at 82:9–83:9.) He does not remember when
       she first told him that she was born in Texas. (*See* Tr. at 82:14.) Her
       parents also told him that she was born in Texas and is a U.S. citizen.
       (*See* Tr. at 88:10–14.)

8.     Ms. Moran has four siblings. (Tr. at 64:17.) Ms. Moran's parents
       never stated that any of her siblings were born in the United States or
       were U.S. citizens. (Tr. at 65:2–6.) One of Ms. Moran's siblings
       became a U.S. citizen through naturalization. (Tr. at 65:5–6.)

9.     After receiving her passport, Ms. Moran applied for green cards for
       her children to visit the United States. (Tr. at 19:19–20:8.) She and
       her mother went to the U.S. Consulate in Ciudad Juárez, Chihuahua,
       Mexico, to interview for the green cards. (Tr. at 20:3–8; Def. Exh. 8.)
       The interviews occurred on October 8, 2009. (*See* Def. Exh. 8.)

10.    Ms. Moran's mother was interviewed alone, outside of the presence
       of Ms. Moran and the rest of her family. (Tr. 20:23–21:1.) During her

interview, she signed an affidavit declaring the following in relevant

part:

> But the truth is that my daughter, Juana María Moran, was NOT born in Elsa, Texas, as I tried to make it appear today in this Consulate with the birth certificate already mentioned. My daughter, Juana María Moran, was born April 27, 1975 in Francisco Zarco, municipality of Villa Union, Durango, in my house located at a known address in Rancho Francisco Zarco of the municipality of Villa Union with a midwife by the name of Ramona Bermudez, the aunt of my then partner, Mr. Santos Moran Bermudez. My former mother-in-law, Juana Bermudez, was the one who decided that we should record Juana María Moran as having been born in the U.S.
>
> My daughter, Juana María Moran, is aware of the facts and was previously recorded in Ciudad Guadalupe Victoria, Durango, but indicating that she had been born in Elsa, Texas, which is totally false.

(Def. Exh. 8.) The sworn statement was translated from Spanish to

English on November 16, 2023. (*Id.*) The name of the official who

took the testimony is redacted. (*Id.*) The Defendants did not introduce

any foundation or further context for this testimony, or any evidence

in support of its reliability.

11.   Ms. Moran credibly testified that when her mother left the interview

room, she was terrified and told her daughter to leave the consulate.

(Tr. at 23:18–24:3, 26:6–9.) The interviewers, a man and a woman,

then called Ms. Moran back into the room. When she returned, she

was immediately handed a prepared piece of paper to sign, stating that

6

she knew she was not a U.S. citizen. (Tr. at 24:9–13.) Ms. Moran credibly testified that she was told she could not leave until she signed the paper. (Tr. at 24:20–21.)

12.   Ms. Moran credibly testified that, when her interviewers realized she would not sign the statement, they changed it to state that she had not known but was now being notified that she is not a U.S. citizen. (Tr. at 24:24–25:2.) Ms. Moran, believing that she would not be allowed to leave without signing something, signed that document because it accurately reflected that she had never been told she was not a U.S. citizen until that moment. (Tr. at 25:3–13.) She was not accompanied or provided with the assistance of counsel during her interview. (Tr. at 25:14–22.)

13.   Ms. Moran did not receive the green cards for her children, and instead was informed that her passport would be revoked. (Tr. at 20: 8–10.) Despite what she was told, the personnel at the consulate returned Ms. Moran's documents to her after the interviews, including her U.S. passport. (Tr. at 26:18.) Her passport in fact remained valid, and was not revoked until April 27, 2013, based on her mother's signed statement. (Def. Exh. 2.)

14.   After the interviews, Ms. Moran wanted to discuss what had happened with her father and other relatives, who were in the United States. (Tr. at 27:5–10.) They told her that "there's no way you can stay in

Mexico. You're an American citizen. You need to come back." (*Id.*)
She never discussed what happened with her mother. (Tr. at 26:15.)

15.    Ms. Moran returned to the United States later that same year. (Tr. at
27:5.) She travelled through the U.S. border, where she presented an
immigration officer with her ID and/or passport. (Tr. at 27:15–18.)
The officer did not tell her that her passport or citizenship had been
revoked, and instead allowed her and children to enter the United
States. (Tr. at 27:21–28:8.) Ms. Moran credibly testified that she has
never been through a proceeding where an attempt was made to
revoke her U.S. citizenship. (Tr. at 27:25.)

16.    The statement of Ms. Moran's mother, that the birth certificates were
fraudulent, is contradicted by her own prior sworn statement to DOS,
by Ms. Moran's father's consistent sworn statements, by credible
testimony as to statements by Ms. Moran's other relatives throughout
her life, and by DOS's own refusal to rely on the statement in its
dealings with Ms. Moran for the ensuing four years. The Court finds
that, in light of the conflicting testimony and evidence before it, and
without evidence as to the circumstances surrounding the interview,
the sworn statement by Ms. Moran's mother on October 8, 2009, is
not credible.

17. On November 30, 2020, a polygraph exam was administered to Ms. Moran[3] by Mike Sommer, a licensed and experienced forensic polygraph examiner. (Pl. Exh. 1.) The purpose of the exam was to determine whether Ms. Moran was being truthful in her statements about being born in and having resided in the United States. (*Id*.) The exam consisted of comparison, neutral, and relevant questions asked using the Air Force Modified General Question Technique (MGQT), and was administered using a Lafayette LX6 polygraph system. (*Id*.)

18. In response to the question, "Is your statement about being born in the U.S. true?", Ms. Moran answered, "yes." (*Id*.) The results of the polygraph indicated "no significant deceptive responses" with respect to that question. (*Id*.)

19. The Court finds, having weighed and assessed the credibility of all of the evidence before it, that it is more likely than not that Ms. Moran was born in Elsa, Texas on April 27, 1975.

**C.   Ms. Moran's Time in the United States Prior to the Plaintiff's Birth**

20. Ms. Moran credibly testified that she was immediately taken back to Mexico after her birth, and that she returned to the United States for the first time in 1987. (Tr. at 32:2–5.) She was between eleven and twelve years old when she returned to the United States. (Tr. at 32:7.)

---

[3]   The polygraph exam report refers to "Juana Maria Caro," Ms. Moran's name from a previous marriage. (Tr. at 37:18–22; Pl. Exh. 1.)

21.    Ms. Moran credibly testified that after returning to the United States in 1987, she lived with her aunt and grandmother in Elsa, Texas for three or four years. (Tr. at 32:5–12.) They then all moved together to a new house, which was either in Cactus or Dumas, Texas.[4] (Tr. at 32:15–16.)

22.    Ms. Moran credibly testified that she entered the sixth grade in the United States at Edcouch-Elsa Elementary School, in Elsa, Texas. (Tr. at 17:7–11.) She believes she attended that school for three or four years. (Tr. at 17:14.) Ms. Moran testified that she attended "Yellow Jacket High School" in Elsa, Texas, but she did not complete the ninth grade and did not graduate.[5] (Tr. at 17:22–18:6.)

23.    Ms. Moran has an immunization record card from the State of Texas, indicating that she received vaccines and immunizations on July 14, 1987, September 14, 1987, and March 14, 1988. (Pl. Exh. 9 at 12.)

24.    Ms. Moran obtained her official elementary cumulative record from Edcouch-Elsa High School. Her records reflect that she entered the sixth grade on September 2, 1987, and that she completed the sixth, seventh, and eighth grades satisfactorily. (*Id.* at 13.) On April 10,

---

[4]    Both Cactus and Dumas are cities in Moore County, Texas, directly north of Amarillo.

[5]    The Court notes that the Edcouch-Elsa High School mascot is the yellowjackets. *See* www.eeisd.org/o/eehs.

1990, after successfully completing the eighth grade, she was qualified to move on to high school. (*Id.*)

25. Ms. Moran obtained her official high school academic achievement record from Edcouch-Elsa High School. Her records indicate that she entered the ninth grade on September 5, 1990, but withdrew on November 13, 1990. (*Id.* at 10.) The school record states that the reason for her withdrawal was "Moving to Dumas, Tx." (*Id.*)

26. Ms. Moran testified on cross-examination that she attended school through 1991, although her testimony is contradicted by the school records, which indicate that she withdrew in 1990 before moving to Dumas. (Tr. at 68:5.)

27. Ms. Moran did not provide school records from her time in Dumas, Texas.

28. Ms. Moran credibly testified that she did not move out of the United States until she returned to Mexico in 1992. (Tr. at 32:20–25.)

29. During her polygraph examination on November 30, 2020, Ms. Moran answered questions about when she lived in the United States. (Pl. Exh. 1.) In response to the question, "Did you reside in the U.S. from 1987 to 1992?", Ms. Moran answered, "yes." (*Id.*) The results of the polygraph indicated "no significant deceptive responses" with respect to that question. (*Id.*)

30.    Ms. Moran testified that she lived in Mexico from 1992 until 2004, and that Mr. Valadez Moran was born in Mexico. (Tr. at 28:12–21, 33:2–13.)

31.    The Defendants did not introduce any evidence related to Ms. Moran's whereabouts from 1987 to 1992.

32.    The Court finds, having weighed and assessed the credibility of all of the evidence before it, that it is more likely than not that Ms. Moran resided in the United States from some time prior to July 14, 1987 (the date of her first immunization) until some date in 1992.[6]

33.    The Court finds that it is more likely than not that Ms. Moran lived continuously in the United States from 1987 to 1992.

34.    Ms. Moran turned fourteen years old on April 27, 1989. Thus, the Court finds that it is more likely than not that Ms. Moran was older than fourteen for at least two of the years that she lived in the United States prior to 1992.

35.    The Court thus finds by a preponderance of the evidence that Ms. Moran resided in the United States for a continuous period of at least

---

[6]    At trial, the Plaintiff introduced his N-600 application, which included sworn affidavits by both Ms. Moran and her father stating that she moved back to Mexico in December of 1992 and explaining the reasons why. (Pl. Exh. 13.) However, the Plaintiff offered this exhibit "for the sole purpose that he applied for an N-600 with the defendant and that it was denied," and the Court received the exhibit "for that purpose." (Tr. at 85:11–19.) Accordingly, the Court does not consider the contents of Plaintiffs' Exhibit 13 for proof of any matter beyond the procedural posture of the N-600 application.

five years prior to the birth of her son, Mr. Valadez Moran, in 1994, and that Ms. Moran was above the age of fourteen for at least two of those years.

**D.    The Plaintiff's Efforts to Enter the United States**

36.    Mr. Valadez Moran first attempted to enter the United States by crossing the border on October 3, 2015. (Tr. at 80:4–8, *see* Def. Exh. 4.) He was apprehended at the border by U.S. border patrol that same day, and was detained in New Mexico for approximately 15 days before being released to Mexico. (Tr. at 80:10–81:2.) Mr. Moran did not claim to be a U.S. citizen during his interactions with the border patrol in 2015. (Tr. at 90:4–6.)

37.    On the day that Mr. Valadez Moran attempted to cross the U.S.-Mexico border and was apprehended, he was interviewed under oath by U.S. border patrol agent Joel Avalos. (Def. Exh. 4.) In his interview, he stated that he is a citizen of Mexico, and that his parents are also citizens of Mexico. (*Id*. at 2–3.)

38.    Mr. Valadez Moran entered the United States for the second time in February of 2016. (Tr. at 82:1.) This time, he was able to enter the country. (Tr. at 82:3.) He has not returned to Mexico since February of 2016. (Tr. at 82:8.)

39.     To the Court's knowledge, Mr. Valadez Moran is not currently in removal proceedings, and has not been the subject of any removal proceedings since he entered the United States in 2016.

40.     Although Mr. Moran does not remember exactly when his mother first told him that she was a U.S. citizen, he credibly testified that he learned this fact when he was still in Mexico, at some time after his attempt to cross the border in October, 2015, but before February, 2016. (Tr. at. 82:19.)

**E.      The Plaintiff's N-600 Application**

41.     On June 28, 2019, Mr. Valadez Moran submitted a Form N-600 Application for a Certificate of Citizenship to the U.S. Citizenship and Immigration Services (USCIS). (Pl. Exh. 13.)

42.     On September 1, 2020, USCIS sent Mr. Valadez Moran its decision denying his application for citizenship. (Pl. Exh. 14.) In its letter, USCIS explained that its reasoning was based upon its internal record of Ms. Moran's mother's testimony that Ms. Moran was born in Durango, Mexico, and not in Elsa, Texas. (*Id.* at 2.) Specifically, "USCIS has found that you did not acquire citizenship at birth and are not eligible for a Certificate of Citizenship under section 301 of the INA because your mother is not a United States citizen." (*Id.*)

43.     On December 1, 2020, Mr. Valadez Moran submitted to USCIS a Form I-290B Notice of Motion to Reopen Based on Denial of Form

N-600, wherein he petitioned USCIS to reopen and approve his application for citizenship. (Pl. Exh. 15.)

44.     On May 11, 2021, USCIS sent Mr. Valadez Moran its decision denying his request to reopen the file. (Pl. Exh. 16.)

## III.    CONCLUSIONS OF LAW

### A.    Jurisdiction

45.     Under 8 U.S.C. § 1503(a), any person who is "within the United States," who "claims a right or privilege as a national of the United States," and who "is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States," may institute an action for declaratory relief against the head of the offending department or agency. The action "shall be filed in the district court of the United States for the district in which such person resides," and "jurisdiction over such officials in such cases is conferred upon those courts." *Id*.

46.     28 U.S.C. § 2201(a) permits a court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration."

47.     An action under § 1503 for declaratory relief may not be brought in connection with any removal proceeding, or be in issue in any such removal proceeding, and must be initiated within five years after the

final administrative denial of the right or privilege sought. 8 U.S.C. § 1503(a).

48.     The Court finds that Mr. Valadez Moran has filed this action within five years of receiving a final administrative denial of his application for citizenship, and that this action is not in any way related to any removal proceeding. Accordingly, the Court concludes that it has jurisdiction over this matter.

**B.     Legal Standards**

49.     Under § 1503(a), the Court makes a de novo determination as to whether the Plaintiff is a U.S. citizen. *See Vance v. Terrazas*, 444 U.S. 252, 256 (1980); *Mathin v. Kerry*, 782 F.3d 804, 805 (7th Cir. 2015); *Hizam v. Kerry*, 747 F.3d 102, 108 (2d Cir. 2014); *Ramirez v. Clinton*, No. 08-cv-5770, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011).

50.     The parties disagree as to the standard of proof to be applied by this Court. The Defendants argue that Mr. Valadez Moran must prove his citizenship status by a preponderance of the evidence [Doc. No. 76 at 6–7]. Mr. Valadez Moran argues that he need only make a prima facie showing of his citizenship, and that the burden then shifts to the Defendants to respond with "clear, unequivocal, and convincing evidence" rebutting his showing [Doc. No. 75 at 13]. Both standards are applied by district courts around the country. *Compare Mujica v.*

*Blinken*, 661 F. Supp. 3d 694, 696 (S.D. Tex. 2023) (plaintiffs must prove citizenship under § 1503 by a preponderance of the evidence), *with Moncada v. Blinken*, —F. Supp. 3d—, 2023 WL 4404646, at *11 (C.D. Cal. July 6, 2023) (under § 1503, once a plaintiff makes a prima facie showing of citizenship, the burden shifts back to the Government to disprove citizenship by clear and convincing evidence). The Eighth Circuit has not weighed in on this dispute.

51.   In *Perez v. Brownell*, the Supreme Court explained that the judicial hearing in a § 1503 action "is a trial de novo in which the individual need make only a prima facie case establishing his citizenship by birth or naturalization." 356 U.S. 44, 47 n.2 (1958), *overruled on other grounds by Afroyim v. Rusk*, 387 U.S. 253 (1967). The *Perez* Court faced a circumstance where the government agency had denied the plaintiff's citizenship based on the plaintiff's supposed act of expatriation. The Court held that the government "must prove the act of expatriation on which the denial was based by clear, unequivocal, and convincing evidence which does not leave the issue in doubt." *Id*. (citing cases).

52.   The Defendants cite to the Supreme Court's decision in *Berenyi v. District Director*, 385 U.S. 630, 637 (1967), which holds that, in the naturalization context, the burden is on the petitioner to prove their eligibility for citizenship. *Berenyi*'s holding is inapposite to this case.

17

Here, Mr. Valadez Moran is asserting that he is a U.S. citizen by birth, and that the Defendants have denied him a privilege he is entitled to as a citizen—a fundamentally different question than whether he meets the statutory eligibility requirements for naturalization. For example, a person claiming U.S. citizenship from birth has constitutional protections under the Fourteenth Amendment that may not extend to a person petitioning for naturalization. *See, e.g.*, *Afroyim*, 387 U.S. at 267–68 (citizens have a constitutional right to remain citizens); *United States v. Kairys*, 782 F.3d 1374, 1383 (7th Cir. 1986) (the protections described in *Afroyim* apply "only to acts committed after citizenship"). The Defendants' own regulations acknowledge a categorical difference in the rights and procedures between questions of birth citizenship and naturalization. *Compare* 8 C.F.R. § 301 ("Nationals and Citizens of the United States at Birth"), *with* 8 C.F.R. § 310 ("Naturalization Authority").

53.     The Fifth Circuit appears to have adopted the Defendant's view that Mr. Valadez Moran must prove his citizenship by a preponderance of the evidence. *See Patel v. Rice*, 403 F. Supp. 2d 560, 562 & n.2 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, that he is a United States national."). On the other hand, the D.C. Circuit has adopted Mr. Valadez Moran's perspective and held that a

18

plaintiff is not required to prove their citizenship under § 1503. *L. Xia v. Tillerson*, 865 F.3d 643, 656 (D.C. Cir. 2017) ("The threshold showing required of a section 1503 plaintiff is minimal. She or he need only show *prima facie* evidence of citizenship . . . The government would then be put to its burden to establish by clear, unequivocal, and convincing evidence the plaintiff's lack of entitlement to the disputed right or privilege of citizenship.") (cleaned up, emphasis in original).

54.     The Court, while skeptical of the Defendants' proposed evidentiary threshold, need not determine the appropriate standard of proof for the purpose of resolving this case. Because the Court ultimately finds that Mr. Valadez Moran has demonstrated he is more likely than not a U.S. citizen by birth, the Court concludes that he would prevail under either standard. *See Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (describing the preponderance standard as a "more likely than not" burden); *accord Gomez-Zuluaga v. United States Att'y Gen.*, 527 F.3d 330, 349 (3d Cir. 2008) (holding that "the more likely than not standard" in removal cases is "equivalent to a preponderance of the evidence").

C.     **Plaintiff's Citizenship Status**

55.     Mr. Valadez Moran's citizenship status is governed by the law in effect at the time of his birth. *Sessions v. Morales-Santana*, 582 U.S.

47, 53 (2017). The governing law in this case is the law that was in force on January 10, 1994.

56. All persons born in the United States, and subject to the jurisdiction thereof, are citizens of the United States. U.S. Const. amend. XIV § 1.

57. Pursuant to 8 U.S.C. § 1401(g) (1994), a person born outside of the United States is a U.S. citizen at birth if one of their parents is a U.S. citizen "who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years."

58. At the time of Mr. Valadez Moran's birth, it is more likely than not that his mother, Ms. Moran, was a citizen of the United States by virtue of her birth in Elsa, Texas on April 27, 1975. U.S. Const. amend. XIV § 1.

59. It is more likely than not that Ms. Moran was physically in the United States for a period of at least five years (from 1987 to 1992), and that she was older than the age of fourteen for at least two of those years, prior to Mr. Valadez Moran's birth.

60. The Court thus finds that Mr. Valadez Moran meets the requirements of § 1401(g) for U.S. citizenship by birth.

61. By the authority vested in this Court under 28 U.S.C. § 2201 and 8 U.S.C. § 1503, the Court declares that Mr. Valadez Moran is a citizen

of the United States, and is entitled to all the rights and privileges that status affords. This declaration shall have the force and effect of a final judgment or decree. 28 U.S.C. § 2201(a).

## IV. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion in Limine to Exclude Mr. Santos Moran's Affidavit to Birth Facts [Doc. No. 37] is **DENIED as Moot**.

2.    Defendants' Motion in Limine to Exclude Ms. Moran and Mr. Moran's Affidavits [Doc. No. 38] is **DENIED**.

3.    Defendants' Motion in Limine to Exclude Documents Related to Ms. Moran's Polygraph Examination [Doc. No. 39] is **DENIED**.

4.    Plaintiff Adrian Valadez Moran's request under 8 U.S.C. § 1503(a) for a declaratory judgment that he is a U.S. citizen, based on the requirements of 8 U.S.C. § 1401(g) (1994), is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 17, 2024                           /s/ Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Judge